## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| JACK ROBINSON, II AND MARY ANNETTA ROBINSON, <br> Debtors | CASE NO: 14-57238-bem <br><br> CHAPTER 13 |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, DOING BUSINESS AS CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR BCAT 2014-9TT, <br> Movant <br><br> v. <br><br> JACK ROBINSON, II AND MARY ANNETTA ROBINSON, <br> Debtors <br><br> MARY IDA TOWNSON, <br> Trustee <br><br> Respondents | CONTESTED MATTER |

### NOTICE OF ASSIGNMENT OF HEARING

NOTICE IS HEREBY GIVEN THAT a Motion for Relief from the Automatic Stay has been filed in the above-styled case. In the event a hearing cannot be held within thirty (30) days from the filing of the motion for relief from the automatic stay as required by 11 U.S.C. § 362, Movant waives this requirement and agrees to the next earliest possible date, as evidenced by signature below. ***The undersigned consents to the automatic stay (and any related co-debtor stay) remaining in effect with respect to Movant until the court orders otherwise***.

HEARING will be held at **9:30 AM** on **January 23, 2018**, in Courtroom 1402 at the U.S. Courthouse, 75 Ted Turner Drive (f/k/a Spring Street), SW, Atlanta, GA 30303.

Your rights may be affected by the Court's ruling on these pleadings. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings, or if you want the Court to consider your

views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, you are not required to do so. If you file a written response, you must attach a certificate stating when, how and to whom (including addresses) you served the response. Mail/deliver your response so it is received by the Clerk at least two (2) business days before the hearing. The address of the Clerk's office: **Clerk, United States Bankruptcy Court, Room 1340, 75 Ted Turner Drive, SW Atlanta, GA 30303**. You must also mail a copy to the undersigned at the address below. In the event a hearing cannot be held within thirty (30) days from the filing of the motion for relief from the automatic stay as required by 11 U.S.C. § 362, Movant waives this requirement and agrees to the next earliest possible date, as evidenced by signature below. *The undersigned consents to the automatic stay (and any related co-debtor stay) remaining in effect with respect to Movant until the court orders otherwise.*

/s/ Mallory Velten
Mallory Velten (GA. Bar No. 726971)
Attorney for Movant
Brock & Scott, PLLC
4360 Chamblee Dunwoody Rd. Suite 310
Atlanta, GA 30341
Phone: 404-789-2661

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| JACK ROBINSON, II AND MARY ANNETTA ROBINSON,<br>     Debtors | CASE NO: 14-57238-bem<br><br>CHAPTER 13 |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, DOING BUSINESS AS CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR BCAT 2014-9TT,<br>     Movant<br><br>v.<br><br>JACK ROBINSON, II AND MARY ANNETTA ROBINSON,<br>     Debtors<br><br>MARY IDA TOWNSON,<br>     Trustee<br><br>Respondents | CONTESTED MATTER |

### MOTION FOR RELIEF FROM AUTOMATIC STAY

**COMES NOW** WILMINGTON SAVINGS FUND SOCIETY, FSB, doing business as CHRISTIANA TRUST, not in its individual capacity but solely as Trustee for BCAT 2014-9TT (hereinafter "Movant"), a secured creditor in the above-captioned case, by and through counsel, Brock & Scott, PLLC, and moves this Court to enter an order granting its request for relief from the automatic stay imposed by 11 U.S.C. § 362(a):

1.     On April 10, 2014, the Debtors, Jack Robinson, II and Mary Annetta Robinson, filed a petition with the Bankruptcy Court for the Northern District of Georgia under Chapter 13 of Title 11 of the United States Code.

2.      The Debtors hold title to the real property (hereinafter "Collateral") described in that Security Deed recorded in the Henry County Register of Deeds in Book 10017 at Page 003 and recorded on March 1, 2007 (hereinafter "Security Deed") with an address of 138 Audubon Pkwy, Stockbridge, Georgia 30281. A copy of the Security Deed is attached hereto and is incorporated herein as Exhibit A.

3.      Movant holds a Promissory Note secured by the Security Deed from the Debtors in the original principal amount of $104,500.00 and dated January 18, 2007 (hereinafter "Note"). A copy of the Note is attached hereto and incorporated herein as Exhibit B.

4.      In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtors obtain a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of WILMINGTON SAVINGS FUND SOCIETY, FSB, doing business as CHRISTIANA TRUST, not in its individual capacity but solely as Trustee for BCAT 2014-9TT (Movant). Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage.

5.      The Debtors have scheduled the value of the Collateral at $58,000.00.

6.      Upon information and belief, the approximate payoff, exclusive of legal fees and expenses incurred in connection with the instant motion, due and owing to Movant as of December 8, 2017 is $110,997.95.

7.      As a result of the averments in paragraphs 5 and 6, no equity exists in the subject property.

8.      The Debtors have defaulted in the mortgage payments to be made outside of the plan. Upon information and belief, the amount of default, exclusive of fees and costs, is as follows:

| 6 | payments @ (7/17 - 12/17) | $ | 945.30 | $ | 5,671.80 |
|---|---|---|---|---|---|
| | Suspense | $ | 93.88 | $ | -93.88 |
| | **Total Delinquency** | | | $ | **5,577.92** |

9.    Cause exists for relief from the automatic stay. Direct post-petition mortgage payments are not being made to Movant as required by the confirmed plan. As such, Movant's interests are not adequately protected.

**WHEREFORE,** Movant prays the Court as follows:

1.    Modify the Automatic Stay of 11 U.S.C. § 362(a) to permit Movant to enforce its security interest in the Collateral including but not limited to any non-bankruptcy remedies to foreclose and obtain possession.

2.    Modify Rule 4001(a)(3) of the Bankruptcy Code so that it is not applicable in this case and so Movant may immediately enforce and implement this order granting relief from the automatic stay.

3.    In the event relief from the stay is granted, for a determination that the plan no longer provides for Movant's claim pursuant to 11 U.S.C. § 1322(b)(5) such that further compliance with Rule 3002.1 is no longer necessary.

4.    As an alternative to the relief prayed for above, grant adequate protection to Movant for its interest in the Collateral.

5.    That Creditor be entitled to recover its reasonable fees and expenses incurred in connection with seeking the relief requested in this Motion.

6.      Plaintiff further prays that through its agents, servicers and representatives be permitted to contact Debtors and/or Debtors' counsel for the purpose of engaging in discussions and consideration for possible loss mitigation options, solutions and/or resolutions with regard to the underlying mortgage and note, including, but not limited to loan modification or other loss mitigation alternatives.

7.      Movant specifically requests permission to communicate with the Debtors and Debtors' counsel to the extent necessary to comply with applicable non-bankruptcy law; and

8.      Grant Movant such other and further relief as the Court deems just and proper.

This 8th day of December, 2017.

<u>/s/ Mallory Velten</u>
Mallory Velten (GA. Bar No. 726971)
Attorney for Movant
Brock & Scott, PLLC
4360 Chamblee Dunwoody Rd. Suite 310
Atlanta, GA 30341
Phone: 404-789-2661
Fax: 404-294-0919
<u>bankruptcy@brockandscott.com</u>

**CERTIFICATE OF SERVICE**

I, Mallory Velten, Attorney at Law, certify that I am, and at all times hereinafter mentioned was, more than 18 years of age; that on the 8th day of December, 2017, I served on the persons listed below a copy of the within MOTION FOR RELIEF FROM STAY AND NOTICE OF ASSIGNMENT OF HEARING by electronic service or by regular mail, with appropriate postage affixed, at:

Jack Robinson, II
138 Audubon Pkwy
Stockbridge, GA 30281

Mary Annetta Robinson
138 Audubon Pkwy
Stockbridge, GA 30281

Howard P. Slomka
Overlook III, Suite 1700
2859 Paces Ferry Rd, SE
Atlanta, GA 30339

Mary Ida Townson
Suite 2200
191 Peachtree Street, NE
Atlanta, GA 30303-1740

This 8th day of December, 2017.

Brock and Scott, PLLC

/s/ Mallory Velten
Mallory Velten (GA. Bar No. 726971)
Brock & Scott, PLLC
4360 Chamblee Dunwoody Rd. Suite 310
Atlanta, GA 30341
Ph: 404-789-2661
Fax: 404-294-0919
bankruptcy@brockandscott.com



```
BOOK        PAGE
010017  0003
```

```
DOC# 0031153
FILED IN OFFICE
03/01/2007  12:59 PM
BK:10017  PG:3-20
JUDITH A LEWIS
CLERK OF SUPERIOR COURT
HENRY COUNTY
```

GEORGIA INTANGIBLE
TAX PAID
$313.50
DATE 2/12/2007

CLERK OF SUPERIOR COURT
HENRY COUNTY

Return to:

5 C⬛
31ˢᵗ Floor
Atlanta, Georgia 30328

_____ [Above This Line For Recording Data] _____

Loan No: ⬛                                                        Data ID: 178
Borrower: MARY A. ROBINSON

## SECURITY DEED                    MIN ⬛

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated January 18, 2007, together with all Riders to this document.

(B) "Borrower" is MARY A. ROBINSON AND   JACK ROBINSON   . Borrower is the grantor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is HOMELAND CAPITAL GROUP, LLC. Lender is A LIMITED LIABILITY COMPANY organized and existing under the laws of the State of NORTH CAROLINA. Lender's address is 1801 STANLEY RD. STE 400          GREENSBORO, NC 27407.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3011   1/01   *(Page 1 of 16 Pages)*



010017 0004

Loan No: ███████                                                    Data ID:  178

(E) "Note" means the promissory note signed by Borrower and dated January 18, 2007.  The Note states that Borrower owes Lender ONE HUNDRED FOUR THOUSAND FIVE HUNDRED and NO/100-----Dollars (U.S. $ 104,500.00) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than January 23, 2037.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider
☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna              Form 3011    1/01    *(Page 2 of 16 Pages)*

010017 0005

Loan No: ▓▓▓▓▓▓▓▓                                            Data ID:  178

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the County of HENRY:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3011    1/01    *(Page 3 of 16 Pages)*

010017 0006

Loan No:                                                                    Data ID: 178

which currently has the address of 138 AUDUBON PARKWAY,
                                    [Street]
STOCKBRIDGE, GEORGIA                                  30281            ("Property Address"):
[City]                                                [Zip Code]

    TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and
Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all
the improvements now and hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered
by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted
by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as
nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those
interests, including, but not limited to, the right to foreclose and sell the Property; and to take any
action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and
has the right to grant and convey the Property and that the Property is unencumbered, except for
encumbrances of record. Borrower warrants and will defend generally the title to the Property against
all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering
real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any
prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow
Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made
in U.S. currency. However, if any check or other instrument received by Lender as payment under the
Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all
subsequent payments due under the Note and this Security Instrument be made in one or more of the
following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose
deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note
or at such other location as may be designated by Lender in accordance with the notice provisions in
Section 15. Lender may return any payment or partial payment if the payment or partial payments are
insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient
to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse
such payment or partial payments in the future, but Lender is not obligated to apply such payments
at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due
date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds
until Borrower makes payment to bring the Loan current. If Borrower does not do so within a
reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not
applied earlier, such funds will be applied to the outstanding principal balance under the Note
immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future
against Lender shall relieve Borrower from making payments due under the Note and this Security
Instrument or performing the covenants and agreements secured by this Security Instrument.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                 Form 3011   1/01   *(Page 4 of 16 Pages)*

010017 0007

Loan No: █████████                                                    Data ID: 178

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Glanna                    Form 3011    1/01    *(Page 5 of 16 Pages)*

010017 0008

Loan No: ███████████                                                    Data ID: 178

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3011    1/01    *(Page 6 of 16 Pages)*

BOOK    PAGE

010017  0009

Loan No: ▓▓▓▓▓▓                                                    Data ID:  178

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                Form 3011   1/01   (Page 7 of 16 Pages)

Loan No: ███████                                                    Data ID: 178

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                Form 3011    1/01    *(Page 8 of 16 Pages)*

010017 0011

Loan No: ███████████                                              Data ID:  178

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.
If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument,
(b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or
rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation
or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to
enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay
for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under
this Security Instrument, including protecting and/or assessing the value of the Property, and securing
and/or repairing the Property (as set forth below).  Lender's actions can include, but are not limited
to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing
in court; and (c) paying reasonable attorneys' fees of 15.00% of the sums due under the Note or the
amount allowable under applicable state law to protect its interest in the Property and/or rights under
this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the
Property includes, but is not limited to, making repairs, replacing doors and windows, draining water
from pipes, and eliminating building or other code violations or dangerous conditions.  Although
Lender may take action under this Section 9, Lender does not have to do so and is not under any duty
or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions
authorized under this Section 9.
Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower
secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date
of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower
requesting payment.
If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the
lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge
unless Lender agrees to the merger in writing.
10.  Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the
Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for
any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the
mortgage insurer that previously provided such insurance and Borrower was required to make separately
designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums
required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at
a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect,
from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance
coverage is not available, Borrower shall continue to pay to Lender the amount of the separately
designated payments that were due when the insurance coverage ceased to be in effect.  Lender will
accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.
Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in
full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.
Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and
for the period that Lender requires) provided by an insurer selected by Lender again becomes available,
is obtained, and Lender requires separately designated payments toward the premiums for Mortgage
Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower
was required to make separately designated payments toward the premiums for Mortgage Insurance,
Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a
non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with
any written agreement between Borrower and Lender providing for such termination or until
termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation
to pay interest at the rate provided in the Note.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                  Form 3011    1/01    *(Page 9 of 16 Pages)*

010017 0012

Loan No: ███████                                                Data ID: 178

    Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

    Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

    As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

    (a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

    (b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

    11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

    If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

    In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3011   1/01   *(Page 10 of 16 Pages)*

Loan No: ███████                                                    Data ID:  178

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.   Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.   "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.   Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.   The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.   Borrower Not Released; Forbearance By Lender Not a Waiver.   Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.   Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.   Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3011    1/01    *(Page 11 of 16 Pages)*

Loan No: ██████████                                                        Data ID: 178

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees of 15.00% of the sums due under the Note or the amount allowable under applicable state law, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**GEORGIA** – Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3011    1/01    *(Page 12 of 16 Pages)*

Loan No: ▮▮▮▮▮▮▮                                                      Data ID:  178

16.  Governing Law; Severability; Rules of Construction.  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  Borrower's Copy.  Borrower shall be given one copy of the Note and of this Security Instrument.

18.  Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

19.  Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note or the amount allowable under applicable state law, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                Form 3011    1/01    *(Page 13 of 16 Pages)*

Loan No:█████████                                                      Data ID: 178

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3011    1/01    *(Page 14 of 16 Pages)*

Loan No: ███████                                      Data ID: 178

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:
    22. Acceleration; Remedies. Following Borrower's breach of any covenant or agreement in this Security Instrument, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note or the amount allowable under applicable state law and costs of title evidence.
    If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.
    Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note or the amount allowable under applicable state law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.
    If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.
    23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.
    24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.
    25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.
    26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                Form 3011    1/01    *(Page 15 of 16 Pages)*

010017 0018

Loan No: ███████     Data ID: 178

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered on the _18_ day of ___Jan___, 20_07_ in the presence of:

...................................................................
Unofficial Witness

...................................................................
Notary Public .......................................County

_____(Seal)     _____(Seal)
JACK ROBINSON —Borrower              MARY A. ROBINSON —Borrower

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3011   1/01   *(Page 16 of 16 Pages)*



BOOK     PAGE

**EXHIBIT "A"**
**LEGAL DESCRIPTION OF PROPERTY** 0 1 0 0 1 7   0 0 1 9

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 130, 12TH DISTRICT, HENRY COUNTY, GA, BEING LOT 110, PATILLO POINTE SUBDIVISION, UNIT TWO, AS PER PLAT RECORDED IN PLAT BOOK 13, PAGE 178, HENRY COUNTY, GA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.**

Loan No: ██████████

Borrower:  MARY A. ROBINSON

Data ID: 178

BOOK   PAGE
010017  0020

## WAIVER OF BORROWER'S RIGHTS

THIS WAIVER OF BORROWER'S RIGHTS is made this January 18, 2007, and is incorporated into and shall be deemed to amend and supplement the Security Deed of the same date ("Security Deed") given by the undersigned ("Borrower") to secure Borrower's Note to HOMELAND CAPITAL GROUP, LLC ("Lender") of the same date and covering the property described in the Security Deed and located at:  138 AUDUBON PARKWAY, STOCKBRIDGE, GEORGIA  30281.

ADDITIONAL COVENANT.  IN ADDITION TO THE COVENANTS AND AGREEMENTS MADE IN THE SECURITY DEED, BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

BY EXECUTION OF THIS PARAGRAPH, BORROWER EXPRESSLY: (1)  ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF SECTION 22 OF THE SECURITY DEED; (2)  WAIVES ANY AND ALL RIGHTS WHICH BORROWER MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTIONS FOR THE SEVERAL STATES OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED UNDER THE PROVISIONS OF SECTION 22 OF THE SECURITY DEED; (3)  ACKNOWLEDGES THAT ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF THE SECURITY DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO BORROWER AND BORROWER HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF BORROWER'S CHOICE PRIOR TO EXECUTING THE SECURITY DEED; (4)  ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF BORROWER HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY BORROWER AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5)  AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY BORROWER:

Signed, sealed and delivered in the presence of:

Witness

...........Tracy Reid...........................................(Seal)
(Printed Name)

_Mary A Robinson_ _____
MARY A. ROBINSON —Borrower

_Jack Robinson_ _____

STATE of GEORGIA
COUNTY of

§
§

Sworn to and subscribed before me on the _18_ day of _Jan_____, 20_07_.

_Sean Faulkner_ _____
Notary Public

_Sean Faulkner_ _____
(Printed Name)

My commission expires: _6-7-10_ _____

SEAN FAULKNER
NOTARY
EXPIRES
GEORGIA
JUNE 7, 2010
PUBLIC
COBB COUNTY

GEORGIA VA/FNMA WAIVER



Doc ID: 016180580002 Type: ASGN
Recorded: 05/24/2013 at 11:30:24 AM
Fee Amt: $9.00 Page 1 of 2
Henry, GA Clerk of Superior Court
Barbara Harrison Clerk of Court

BK **13106** PG**90-91**

*This space for Recorder's use*

| | |
|---|---|
| Recording Requested By:<br>**Bank of America**<br>Prepared By:<br>**Diana De Avila**<br>**800-444-4302**<br>**1800 Tapo Canyon Road**<br>**Simi Valley, CA 93063** | When recorded mail to:<br>**CoreLogic**<br>**Mail Stop: ASGN**<br>**1 CoreLogic Drive**<br>**Westlake, TX 76262-9823** |

Property Address:
**138 Audubon Pkwy**
**Stockbridge, GA 30281-1743**
GA0v2M-ASD25302408   5/13/2013   FCL01

MIN #: [redacted]                    MERS Phone #: 888-679-6377

## ASSIGNMENT OF SECURITY DEED

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (herein "Assignor"),
whose address is P.O. Box 2026, Flint, MI 48501-2026, AS NOMINEE FOR HOMELAND CAPITAL
GROUP, LLC and its successors and assigns hereby assign and transfer to BANK OF AMERICA NA (herein
"Assignee"), whose address is C/O BAC, M/C: CA6-914-01-43, 1800 TAPO CANYON ROAD, SIMI
VALLEY, CA 93063, and its successors and assigns all its right, title, and interest in and to a certain Security
Deed described below.

| | |
|---|---|
| Original Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS<br>NOMINEE FOR HOMELAND CAPITAL GROUP, LLC |
| Made By: | MARY A. ROBINSON AND JACK ROBINSON |
| Date of Security Deed: | 1/18/2007 |
| Original Loan Amount: | $104,500.00 |
| Certificate of Title Number: | ABSTRACT LAND |

Recorded in Henry County,G A on: 3/1/2007, book 010017, page 0003 and instrument number 009198

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOMELAND
CAPITAL GROUP, LLC

By: _____              By: _____
Migual Romero Vice President                 Talisha Wallace Assistant Secretary

Date   MAY 1 3 2013                        Date   MAY 1 3 2013

Witness: _____          Witness: _____
Beverly Brooks                                Trisha Jackson

State of **California**
County of Ventura

On ___MAY 1 3 2013___ before me, _____*Danya Bucaro*_____, Notary Public, personally
appeared _____Miguel Romero_____ and _____Talisha Wallace_____, who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person
(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____*Danya Bucaro*_____
My Commission Expires: ___*March 15, 2014*___           (Seal)

DANYA BUCARO
Commission # 1880386
Notary Public - California
Los Angeles County
My Comm. Expires Mar 15, 2014

DocID#    11714923347816078

RECEIVED IN OFFICE
HENRY COUNTY
CLERK OF SUPERIOR COURT

2015 APR 13 AM 11:25

BK: 14000 PG: 47-48
Filed and Recorded Apr-13-2015 04:07:59PM
DOC#: D2015-007958
BARBARA A. HARRISON
CLERK OF SUPERIOR COURT Henry County GA.

**WHEN RECORDED RETURN TO:**
Avenue 365 Lender Services
401 Plymouth Rd, Ste. 550
Plymouth Meeting, PA 19462

## ASSIGNMENT OF SECURITY DEED

FOR VALUE RECEIVED, the undersigned, **BANK OF AMERICA, N.A.,** located at **1800 Tapo Canyon Road, Simi Valley, CA 93063,** ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: **Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity, but solely as trustee for BCAT 2014-9TT Trust,** located at **500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801, Attn: Corporate Trust Office – BCAT 2014-9TT** ("ASSIGNEE/GRANTEE") all beneficial interest under that certain **Security Deed** dated **1/18/2007**, and executed by **MARY A. ROBINSON AND JACK ROBINSON**, borrower(s) to: Mortgage Electronic Registration Systems, Inc. solely as a nominee for **HOMELAND CAPITAL GROUP, LLC**, as original lender, and certain instrument recorded **3/1/2007**, in **INSTRUMENT NO. 009198, BOOK 010017, PAGE 0003**, in the Official Records of **HENRY** County, the State of **Georgia**, given to secure a certain Promissory Note in the amount of $104,500.00 covering property located at: **138 AUDUBON PARKWAY, STOCKBRIDGE, GEORGIA 30281**

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein.

BK: 14000 PG: 48

*Power of Attorney recorded in Miami-Dade County, Florida as CFN: 20150010904, Book 29456, Page 1888

Dated:    MAR 1 2 2015

ASSIGNOR: BANK OF AMERICA, N.A.
By: Rushmore Loan Management Services LLC, Its Appointed Attorney In Fact

Witness    Jared Kops

Witness    Ariane Shafer

By: _____

Name: **Johnny Chapa**
          **Assistant Vice President**

Title: _____

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

---

State of <u>California</u>
County of <u>ORANGE</u>

On ___MAR 1 2 2015___, before me, __S. Jimenez__, **Notary Public**, personally appeared, ___**Johnny Chapa**___ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**S. JIMENEZ**
Commission # 1939321
Notary Public - California
Orange County
My Comm. Expires Jun 29, 2015

_____
Signature of Notary

Property Address: 138 AUDUBON PARKWAY, STOCKBRIDGE, GEORGIA 30281    Original Loan
                                                                        Amount: $104,500.00

Exhibit B

Loan No: ███████████                                      Data ID: 178
Borrower: MARY A. ROBINSON

# BALLOON NOTE                    MIN ███████████████
## (FIXED RATE)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE
OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE
THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER
ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER
YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT
MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED
WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

January 18, 2007                    STOCKBRIDGE                    GEORGIA
                                        [City]                        [State]

138 AUDUBON PARKWAY
STOCKBRIDGE, GEORGIA 30281
[Property Address]

1. BORROWER'S PROMISE TO PAY
     In return for a loan that I have received, I promise to pay U.S. $ 104,500.00 (this amount is called "Principal"),
plus interest, to the order of Lender. Lender is HOMELAND CAPITAL GROUP, LLC. I will make all payments
under this Note in the form of cash, check or money order.
     I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST
     Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest
at a yearly rate of 6.890%.
     The interest rate required by this Section 2 is the rate I will pay both before and after any default described
in Section 6(B) of this Note.

3. PAYMENTS
     (A) Time and Place of Payments
     I will pay principal and interest by making a payment every month.
     I will make my monthly payments on the twenty-third day of each month beginning on February 23, 2007. I
will make these payments every month until I have paid all of the principal and interest and any other charges
described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date
and will be applied to interest before Principal. If, on January 23, 2037, I still owe amounts under this Note, I will
pay those amounts in full on that date, which is called the "Maturity Date."
     I will make my monthly payments at 1801 STANLEY RD., STE 400, GREENSBORO, NORTH CAROLINA
27407 or at a different place if required by the Note Holder.

**MULTISTATE BALLOON FIXED RATE NOTE** - Single Family - FANNIE MAE UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                          Form 3260  1/01
                                                                 (Page 1 of 4 Pages)

INITIALS: _Mar_____

Loan No:|████████|                                                    Data ID:  178

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 641.06.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may prepay all or any part of the unpaid balance of the principal at any time, in which event Note Holder may, at its option and as permitted by law, assess a prepayment penalty of 1.00% of the amount prepaid in the first three years (36 month period).

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

By accepting partial payment of any payment, Note Holder does not waive the right to collect the remainder of such payment.  Acceptance of any payment after maturity, or waiver of any breach or default of the terms of this Note shall not constitute a waiver of any later or other breach or default, and failure of Note Holder to exercise any of its rights shall not constitute waiver of such rights.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 5.00 % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Acceleration
If I am in default, the Note Holder may without notice or demand, unless otherwise required by applicable law, require me to pay immediately the full amount of Principal that has not been paid and all interest that I owe on that amount.

(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees of 15.00% of the sums due under this Note or the amount allowable under applicable state law.

**MULTISTATE BALLOON FIXED RATE NOTE** - Single Family - FANNIE MAE UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna

Form 3260  1/01
*(Page 2 of 4 Pages)*

INITIALS:_____

Loan No: ███████                                                    Data ID: 178

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of notice of acceleration, Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

**MULTISTATE BALLOON FIXED RATE NOTE** - Single Family - FANNIE MAE UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna

Form 3260   1/01
*(Page 3 of 4 Pages)*

INITIALS: _Mall_

Loan No: ▮▮▮▮▮▮                                                    Data ID: 178

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
MARY A. ROBINSON —Borrower

[Sign Original Only]

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS, INC.
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB
FKA COUNTRYWIDE BANK, N.A.

BY _____
LAURIE MEDER
SENIOR VICE PRESIDENT

PAY TO THE ORDER OF
FIRST GREENSBORO HOME EQUITY, INC.
WITHOUT RECOURSE

HOMELAND CAPITAL GROUP, LLC

By: _____

Its: _____
Jason Dubrasky
Asst. Treasurer      (Printed Name and Title)

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY: _____
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

Pay To The Order Of:
COUNTRYWIDE BANK, N.A.
Without Recourse
First Greensboro Home Equity, Inc.
By: _____
Name: _____
Title: _____
Jason Dubrasky
Asst. Treasurer

**MULTISTATE BALLOON FIXED RATE NOTE** - Single Family - FANNIE MAE UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna

Form 3260  1/01
(Page 4 of 4 Pages)

| Post-Petition Due date | Date Received | Amount Received | Amount Due | Suspense Application | Suspense Balance |
|---|---|---|---|---|---|
| | 5/21/2014 | $500.00 | | 500.00 | $ 500.00 |
| 5/1/2014 | 6/12/2014 | $402.62 | $ 902.62 | $ (500.00) | $ - |
| 6/1/2014 | 7/1/2014 | $902.62 | $ 902.62 | $ - | $ - |
| 7/1/2014 | 7/21/2014 | $902.62 | $ 902.62 | $ - | $ - |
| 8/1/2014 | 8/22/2014 | $902.62 | $ 902.62 | $ - | $ - |
| 9/1/2014 | 9/8/2014 | $902.62 | $ 902.62 | $ - | $ - |
| 10/1/2014 | 10/1/2014 | $898.36 | $ 898.36 | $ - | $ - |
| 11/1/2014 | 11/21/2014 | $898.36 | $ 898.36 | $ - | $ - |
| 12/1/2014 | 12/1/2014 | $898.36 | $ 898.36 | $ - | $ - |
| 1/1/2015 | 12/30/2014 | $898.36 | $ 898.36 | $ - | $ - |
| 2/1/2015 | 1/30/2015 | $898.36 | $ 898.36 | $ - | $ - |
| 3/1/2015 | 3/4/2015 | $898.36 | $ 898.36 | $ - | $ - |
| 4/1/2015 | 4/6/2015 | $898.36 | $ 898.36 | $ - | $ - |
| 5/1/2015 | 5/5/2015 | $898.36 | $ 898.36 | $ - | $ - |
| 6/1/2015 | 6/10/2015 | $898.36 | $ 898.36 | $ - | $ - |
| 7/1/2015 | 7/9/2015 | $898.36 | $ 898.36 | $ - | $ - |
| 8/1/2015 | 8/12/2015 | $898.36 | $ 898.36 | $ - | $ - |
| 9/1/2015 | 9/10/2015 | $898.36 | $ 898.36 | $ - | $ - |
| 10/1/2015 | 10/14/2015 | $898.36 | $ 898.36 | $ - | $ - |
| 11/1/2015 | 11/12/2015 | $898.36 | $ 898.36 | $ - | $ - |
| 12/1/2015 | 12/11/2015 | $898.36 | $ 898.36 | $ - | $ - |
| 1/1/2016 | 1/14/2016 | $898.36 | $ 898.36 | $ - | $ - |
| 2/1/2016 | 2/11/2016 | $898.36 | $ 898.36 | $ - | $ - |
| 3/1/2016 | 2/16/2016 | $898.36 | $ 898.36 | $ - | $ - |
| 4/1/2016 | 3/9/2016 | $898.36 | $ 898.36 | $ - | $ - |
| 5/1/2016 | 4/13/2016 | $898.36 | $ 898.36 | $ - | $ - |
| 6/1/2016 | 5/11/2016 | $898.36 | $ 898.36 | $ - | $ - |
| 7/1/2016 | 6/9/2016 | $898.36 | $ 898.36 | $ - | $ - |
| 8/1/2016 | 7/8/2016 | $898.36 | $ 898.36 | $ - | $ - |
| 9/1/2016 | 8/19/2016 | $898.36 | $ 898.36 | $ - | $ - |
| 10/1/2016 | 10/13/2016 | $898.36 | $ 898.36 | $ - | $ - |
| 11/1/2016 | 11/10/2016 | $898.36 | $ 898.36 | $ - | $ - |
| 12/1/2016 | 12/15/2016 | $935.09 | $ 898.36 | $ 36.73 | $ 36.73 |
| 1/1/2017 | 1/12/2017 | $945.30 | $ 898.36 | $ 46.94 | $ 83.67 |
| 2/1/2017 | 3/1/2017 | $945.30 | $ 935.09 | $ 10.21 | $ 93.88 |
| 3/1/2017 | 3/8/2017 | $945.30 | $ 945.30 | $ - | $ 93.88 |
| 4/1/2017 | 5/10/2017 | $945.30 | $ 945.30 | $ - | $ 93.88 |
| 5/1/2017 | 6/30/2017 | $945.30 | $ 945.30 | $ - | $ 93.88 |
| 6/1/2017 | 7/12/2017 | $945.30 | $ 945.30 | $ - | $ 93.88 |
| 7/1/2017 | | | $ 945.30 | $ (945.30) | $ (851.42) |
| 8/1/2017 | | | $ 945.30 | $ (945.30) | $ (1,796.72) |
| 9/1/2017 | | | $ 945.30 | $ (945.30) | $ (2,742.02) |
| 10/1/2017 | | | $ 945.30 | $ (945.30) | $ (3,687.32) |
| 11/1/2017 | | | $ 945.30 | $ (945.30) | $ (4,632.62) |
| 12/1/2017 | | | $ 945.30 | $ (945.30) | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |
| | | | $ - | | $ (5,577.92) |

| Loan Number | |
|---|---|
| Debtor | Robinson |
| BK filed date | 4/10/2014 |
| BK Case # | 14-57238 |
| Loan Acquired | 6/1/2016 |
| Post Next Due | 7/1/2017 |
| Suspense | $ 93.88 |

| Due Date | Due Amount | # Months | Total Due |
|---|---|---|---|
| 7/1/17-12/1/17 | $945.30 | 6 | $ 5,671.80 |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | | $ - |
| | | Subtotal | $ 5,671.80 |
| | | Less Unapplied | $ 93.88 |
| | | Total to bring current | $ 5,577.92 |

$       5,671.80
$      (5,577.92)
$           93.88   unapplied

**Payment Address:**
Shellpoint Mortgage Servicing
PO Box 740039
Cincinnati, OH 45274-0039

**Overnight Payment Address:**
Shellpoint Mortgage Servicing
Attn Payment Processing
55 Beattie Place Ste 110
Greenville, SC 29601



MONDAY - FRIDAY:    8AM - 10PM ET
SATURDAY:    8AM - 3PM ET

PHONE NUMBER:    (800) 365-7107
FAX NUMBER:    (866) 467-1187
E-MAIL: LOANSERVICING@SHELLPOINTMTG.COM

November 24, 2017

Mary A  Robinson
138 Audubon Pkwy
Stockbridge GA  30281

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: ████████

Mary A Robinson
138 Audubon Pkwy
Stockbridge, GA   30281
Loan Type: Conventional

When remitting funds, please use our loan number to ensure proper posting and provide us with the borrower's forwarding address.  Funds received in this office after 3:00 pm Eastern Time will be processed on the next business day, with interest charged to that date.

All payoff figures are subject to clearance of funds in transit.  The payoff is subject to final audit when presented.  Any overpayment or refunds will be mailed directly to the borrower.  We will prepare the release of our interest in the property after all funds have cleared.

| | | |
|---|---|---|
| **Projected Payoff Date** | | **12/8/2017** |
| Principal Balance | | $102,236.58 |
| Interest To 12/8/2017 | | $3,638.57 |
| Fees | | $1,101.64 |
| Prepayment Penalty | | $0.00 |
| Release Fees | | $12.00 |
| Funds owed by borrower | | $1,116.47 |
| Funds owed to borrower | | ($687.97) |
| Deferred Principal | | $3,580.66 |
| | | |
| **Total Payoff** | | **$110,997.95** |
| Per diem | | $19.07 |

The next payment due date is 7/1/2017. Payments are made by Billing on a Monthly basis. The interest rate for this payment is 6.89000% and the P & I payment is $782.88.  The taxes are next due 11/15/2018.
**PLEASE CALL THE NUMBER LISTED ON THIS FORM TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

Mailing Address
Shellpoint Mortgage Servicing
55 Beattie Place
Suite 110
Greeenville, SC 29601

PO1.rpt
11/24/2017



MONDAY - FRIDAY:    8AM - 10PM ET
SATURDAY:    8AM - 3PM ET

PHONE NUMBER:    (800) 365-7107
FAX NUMBER:    (866) 467-1187
E-MAIL: LOANSERVICING@SHELLPOINTMTG.COM

Wiring Instructions - **You must include the "Reference" information listed below if wiring funds \***

Bank Name:        Wells Fargo
ABA Number:       ███████████
Account Number:   ███████████
Account Name:     Shellpoint Mortgage Servicing
Reference:        ███████████



MONDAY - FRIDAY:    8AM - 10PM ET
SATURDAY:      8AM - 3PM ET

PHONE NUMBER:    (800) 365-7107
FAX NUMBER:    (866) 467-1187
E-MAIL: LOANSERVICING@SHELLPOINTMTG.COM

**Mary A Robinson  -  Loan ID #** ███████

## FEE DETAILS

| Description | Amount |
|---|---|
| Late Charge Payment | $199.39 |
| Property Inspection | $126.50 |
| Court Costs | $25.00 |
| FC Costs | $5.94 |
| Prior Servicer Cost | $474.81 |
| Auctioneer Cost | $270.00 |
| | **$1,101.64** |